UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| S&S STEEL SERVICES, INC., | ) Case No. 15-07401-JJG-7 |
| | ) |
| Debtor. | ) |

**APPLICATION OF WELLS FARGO BANK, NATIONAL ASSOCIATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 507(b)**

Wells Fargo Bank, National Association ("Wells Fargo"), by counsel, pursuant to 11 U.S.C. § 507(b), respectfully requests that the Court enter an order allowing and authorizing payment of a chapter 11 administrative expense claim of Wells Fargo in the above-captioned chapter 7 case (the "Chapter 7 Case"). In support thereof, Wells Fargo states as follows:

**Jurisdiction and Venue**

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1448 and 1409.

2.  The statutory bases for the relief requested herein are Sections 507(b) and 503(b) of the Bankruptcy Code.

**Background**

3.  On August 31, 2015 (the "Petition Date"), S&S Steel Services, Inc. ("Debtor") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division (the "Court").

4.  In July 2014, Wells Fargo extended three loans to Debtor and its co-borrowers: a real estate loan, an equipment loan, and a line of credit facility. Wells Fargo has a first priority, perfected

security interest in substantially all of the Debtor's assets to secure the Debtor's obligations to Wells Fargo related to such loans.

5. Subject to the stated maximum commitment, the amount the Debtor was permitted to draw on the line of credit facility was determined by reference to a borrowing base formula. Prior to the Petition Date, the value of the borrowing base assets fell below the amount of the outstanding advances on the line of credit, thereby causing an overadvance and triggering an event of default under the loan documents. After the filing of the Chapter 11 Case, the Debtor used the concept of an "Effective Overadvance" to measure the extent to which the value of the Debtor's eligible receivables, inventory, and cash on hand, fell short of the aggregate amount advanced under the line of credit.

### Cash Use Orders

6. On the Petition Date, the Debtor filed the *First Day Motion for Authorization to Use Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to Prepetition Secured Lender Pursuant to 11 U.S.C. § 361* (the "Cash Use Motion") [Docket No. 7], requesting immediate use of Wells Fargo's Cash Collateral.[1]

7. Wells Fargo consented to the use of its Cash Collateral pursuant to the terms of a series of interim orders on the Cash Use Motion entered on September 4, 2015, October 2, 2015, October 13, 2015, November 19, 2015, and December 23, 2015 [Docket Nos. 20, 40, 72, 105, and 148] (collectively, the "Cash Use Orders").

8. Each of the Cash Use Orders attached a budget reflecting the permissible uses of Wells Fargo's Cash Collateral and the budgeted Effective Overadvance. The Cash Use Orders also:

    a. Ordered the Debtor to grant adequate protection to Wells Fargo's interests pursuant to Section 363 of the Bankruptcy Code. *Cash Use Orders*, ¶ 8.

    b. Provided that "to the extent of Cash Collateral used and to the extent of any diminution in value of the Pre-Petition Collateral," Wells Fargo was granted a

---

[1] The Debtor's cash and cash equivalents and the proceeds of the Debtor's personal property constitute Wells Fargo's cash collateral pursuant to Section 363 of the Bankruptcy Code and shall be referred to in this application as "Cash Collateral."

2

        replacement lien on all present and future property of the Debtor's estate (excluding avoidance actions under the Bankruptcy Code and the proceeds thereof). *Cash Use Orders*, ¶ 8.

   c.   Granted Wells Fargo "an administrative expense claim allowable under section 503(b)(1) of the Bankruptcy Code with priority over all other administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code and all other expenses and claims, but only to the extent such security interest and replacement lien proves to have been inadequate to protect Wells Fargo from the use of its Cash Collateral and the diminution in value of its interest in the Pre-Petition Collateral; provided, however, that the Wells Fargo Superpriority Claim shall have priority with respect to 50% of the Avoidance Action Recoveries of each dollar of Avoidance Action Recoveries as and when they are received and shall not have priority with respect to the remaining 50% of Avoidance Action Recoveries." *Cash Use Orders*, ¶ 8(b).

   d.   Established various "Events of Default" which would permit Wells Fargo to withdraw its consent to the use of Cash Collateral, including if the Effective Overadvance exceeded $2,600,000 (the "<u>Effective Overadvance Limit</u>"). *Cash Use Orders*, ¶ 10(l).

### Default under the Cash Use Orders

9.    The Debtor exceeded the Effective Overadvance Limit beginning with the week ending November 22, 2015, and continuing thereafter until cash use was terminated on January 14, 2016. On December 11, 2015, Wells Fargo served a Notice of Default under the Cash Use Orders due to the Debtor's exceeding the Effective Overadvance Limit. *See Docket No. 122*.

10.    The Court entered the *Fifth Interim Order Granting Debtor's First Day Motion for Authorization to Use Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to Prepetition Secured Lender Pursuant to 11 U.S.C. § 361* [Docket No. 148] (the "<u>Fifth Cash Use</u>

3

Order") on December 23, 2015. Pursuant to the Fifth Cash Use Order, the Court authorized the Debtor's use of Cash Collateral pursuant to a liquidation budget to allow the Debtor adequate cash to wind-down its operations and preserve the value of its assets in its final weeks. Use of Cash Collateral terminated on January 14, 2016. *Fifth Cash Use Order*, ¶ 6(a); *see also* Docket No. 179 (denying Cash Use Motion).

11. On January 21, 2016 (the "Conversion Date"), the Court entered the *Order Converting Case to Chapter 7* [Docket No. 180]. Randall L. Woodruff was appointed as trustee in the Chapter 7 Case pursuant to the *Notice of Chapter 7 Bankruptcy Case* [Docket No. 181] filed on January 21, 2016. The period from the Petition Date through the Conversion Date is referred to herein as the "Chapter 11 Case."

12. On January 21, 2016, Wells Fargo's collateral was abandoned pursuant to the *Order Granting Wells Fargo Bank, National Association's Motion for Abandonment Pursuant to 11 U.S.C. § 554* [Docket No. 183].

**Relief Requested**

13. Wells Fargo respectfully requests that the Court enter an order (i) allowing Wells Fargo's superpriority administrative expense claim in the amount of $1,066,283.00 (the "Superpriority Claim"), (ii) providing that the Superpriority Claim has priority over all other administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code and all other expenses and claims, and (iii) granting Wells Fargo all other just and proper relief.

**Basis for Relief**

14. Where adequate protection has been granted to a secured creditor and later proves to be inadequate, the secured creditor is entitled to a superpriority administrative expense claim. *In re James B. Downing & Co.*, 94 B.R. 515, 520 (Bankr. N.D. Ill. 1988). 11 U.S.C. § 507(b) provides,

> If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this

4

title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

15. In this case, Wells Fargo is entitled to the Superpriority Claim in the amount of $1,066,283.00 pursuant to 11 U.S.C. § 507(b).

16. The Debtor granted adequate protection to Wells Fargo's interests pursuant to Sections 361 and 363 of the Bankruptcy Code. Paragraph 8 of the Cash Use Orders provided that "to the extent of Cash Collateral used and to the extent of any diminution in value of the Pre-Petition Collateral," Wells Fargo was granted a replacement lien on all present and future property of the Debtor's estate (excluding avoidance actions under the Bankruptcy Code and the proceeds thereof). The approved adequate protection proved to be inadequate to protect Wells Fargo's interests, and Wells Fargo is entitled to a superpriority claim in the amount of the decline of the value of its Pre-Petition Collateral (as defined in the Cash Use Orders). *Bonapfel v. Nalley Motor Trucks (In re Carpet Cleaning Leasing Co., Inc.)*, 991 F.2d 682, 686 (11th Cir. 1993) (citing *In re Mutschler*, 45 B.R. 494, 496 (Bankr. D.N.D. 1984)).

17. The Superpriority Claim is allowable under Sections 507(a)(2) and 503(b)(1) of the Bankruptcy Code. The Debtor used Cash Collateral during the Chapter 11 Case, reflecting that the Debtor believed such use was necessary to the estate. *See Carpet Cleaning Leasing Co.*, 991 F.2d at 686 ("Presumably such use is desired by the debtor and is contributing to the reorganization effort. Otherwise, the debtor would doubtless return the collateral and forgo providing adequate protection. This beneficial use by the debtor is normally "paid for" by the adequate protection.") (quoting *In re Mutschler*, 45 B.R. 494, 496 (Bankr. D.N.D. 1984)).

18. The Debtor requested use of Cash Collateral "to permit, among other things, the orderly continuation of the operation of the Debtor's business, to maintain business relationships with vendors and suppliers, including the purchase of much needed raw materials to fulfill current customer orders, and to satisfy working capital needs." *Cash Use Motion*, ¶ 13. The Cash Use Motion further asserted, "Use of cash collateral is necessary to prevent the immediate and irreparable harm to the Debtor and the bankruptcy estate that would otherwise result if the Debtor is prevented from obtaining use of

5

cash collateral for the foregoing purposes." *Id.* The Cash Use Orders expressly note that use of Cash Collateral was necessary to "allow Debtor to maintain sufficient working capital for general operating needs and to preserve and maximize the value of its assets. Without the use of such funds Debtor will not be able to maintain its business operations and to preserve and maximize the value of its assets." *Cash Use Orders*, ¶ 5(a). The Fifth Cash Use Order included a finding that use of Cash Collateral was necessary "for a limited period of time and in an amount which would allow Debtor to wind-down its operations and preserve and maximize the value of its assets." *Fifth Cash Use Order*, ¶ 5(a). Use of Cash Collateral was an actual and necessary expense of the Debtor's estate, and the Superpriority Claim is thus allowable under Sections 507(a)(2) and 503(b)(1).

19. The increase in the Effective Overadvance during the Chapter 11 Case is an effective measure of loss in value attributable to the Debtor's use of Cash Collateral. The amount owed under the line of credit was reduced slightly by payments of principal made by the Debtor during the pendency of the Chapter 11 Case. Therefore, any increase in the Effective Overadvance reflects a reduction or deterioration of the Debtor's Cash Collateral (eligible receivables, inventory, and cash on hand). The increase in the Effective Overadvance during the pendency of the Chapter 11 Case measures the Debtor's use of Cash Collateral and the decline in the value attributable to its use, and is the appropriate measure of Wells Fargo's claim under Section 507(b) of the Bankruptcy Code.

20. During the first week of the Chapter 11 Case, the Effective Overadvance was $2,081,313. *See Second Cash Use Order, Ex. A* (attached hereto as <u>Exhibit A</u>). For the week ending January 3, 2016, the Effective Overadvance was $3,147,596. *See Transcript from January 8, 2016 hearing*, p. 57, line 18 (relevant page attached hereto as <u>Exhibit B</u>). From the Petition Date through January 3, 2016, the value of Wells Fargo's collateral position deteriorated by $1,066,283.00 due to the Debtor's use of Cash Collateral.

21. For the foregoing reasons, Wells Fargo is entitled to the Superpriority Claim in the amount of $1,066,283.00. Wells Fargo was provided adequate protection for its interests, and the adequate protection approved by the Court proved to be inadequate. *In re James B. Downing & Co.*, 94

6

B.R. at 520. The amount of the claim requested herein is the "value unexpectedly lost during the course of [the] case." *Id.* The express terms of the Cash Use Orders and Section 507(b) of the Bankruptcy Code support the relief requested herein.

WHEREFORE, Wells Fargo respectfully requests that the Court enter an order (i) allowing Wells Fargo's superpriority chapter 11 administrative expense claim in the amount of $1,066,283.00, (ii) providing that the Superpriority Claim has priority over all other chapter 11 administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code and all other expenses and claims, and (iii) granting Wells Fargo all other just and proper relief.

Respectfully submitted,

FAEGRE BAKER DANIELS LLP


By:    /s/ Kayla D. Britton

*Counsel for Wells Fargo Bank, National Association*

Jay Jaffe (#5037-98)
Kayla D. Britton (#29177-06)
600 E. 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile: (317) 569-4800
jay.jaffe@faegrebd.com
kayla.britton@faegrebd.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2016, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Kayla D. Britton on behalf of Creditor Wells Fargo Bank, National Association
kayla.britton@faegrebd.com, cindy.wondra@faegrebd.com;sarah.herendeen@faegrebd.com

Henry A. Efroymson on behalf of Creditor Committee Unsecured Creditor Committee
henry.efroymson@icemiller.com

Sarah Lynn Fowler on behalf of Creditor Committee Unsecured Creditor Committee
Sarah.Fowler@icemiller.com, Kathy.chulchian@icemiller.com

Sarah Lynn Fowler on behalf of Trustee Randall L. Woodruff
Sarah.Fowler@icemiller.com, Kathy.chulchian@icemiller.com

Jay Jaffe on behalf of Creditor Wells Fargo Bank, National Association
jay.jaffe@faegrebd.com, sarah.herendeen@faegrebd.com

Jay P. Kennedy on behalf of Debtor S&S Steel Services, Inc.
jpk@kgrlaw.com, tfroelich@kgrlaw.com;srosner@kgrlaw.com;jli@kgrlaw.com

James A. Knauer on behalf of Debtor S&S Steel Services, Inc.
jak@kgrlaw.com, tjf@kgrlaw.com

Beth Kramer on behalf of U.S. Trustee U.S. Trustee
beth.kramer@usdoj.gov

Paul J Labov on behalf of Creditor Committee Unsecured Creditor Committee
plabov@foxrothschild.com

Jason C. Manfrey on behalf of Creditor Committee Unsecured Creditor Committee
jmanfrey@foxrothschild.com

Harley K Means on behalf of Debtor S&S Steel Services, Inc.
hkm@kgrlaw.com, kmw@kgrlaw.com;ads@kgrlaw.com

Michael G Menkowitz on behalf of Creditor Committee Unsecured Creditor Committee
mmenkowitz@foxrothschild.com

Gregory Ostendorf on behalf of Creditor Viking Materials, Inc.
gostendorf@scopelitis.com, agregory@scopelitis.com

Mark R. Owens on behalf of Creditor Mill Steel Company
mowens@btlaw.com, mark.owens@btlaw.com;bankruptcyindy@btlaw.com

John Thomas Piggins on behalf of Creditor West Walker Steel Company
pigginsj@millerjohnson.com, ecfpigginsj@millerjohnson.com

Wendy W Ponader on behalf of Creditor Wells Fargo Bank, National Association
wendy.ponader@faegrebd.com, sarah.herendeen@faegrebd.com

Amanda Dalton Stafford on behalf of Debtor S&S Steel Services, Inc.
ads@kgrlaw.com, cking@kgrlaw.com;srosner@kgrlaw.com

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

Randall L. Woodruff
rlwtrustee@comcast.net, rlw@trustesolutions.net

Randall L. Woodruff on behalf of Trustee Randall L. Woodruff
rlwtrustee@comcast.net, rlw@trustesolutions.net

/s/ Kayla D. Britton